IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| EVANS DELIVERY COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> GFA ALABAMA, INC., <br><br> Defendant. | Civil Action No. <br> 1:23-cv-05798-VMC |

**OPINION AND ORDER**

Before the Court are the following motions:

- Plaintiff Evans Delivery Company, Inc.'s ("Evans") Motion to Dismiss Counterclaim (Doc. 15);

- Evans's Motion to Dismiss Amended Counterclaim (Doc. 18); and

- Evans's Motion for Summary Judgment (Doc. 25).

The Motions to Dismiss and for Summary Judgment are largely based on similar arguments. For the reasons that follow, the Court will deny the Motions to Dismiss (Docs. 15, 18) and the Motion for Summary Judgment (Doc. 25) and will order supplemental briefing.

## Background[1]

Evans is a federally licensed motor carrier that provides freight transportation services on behalf of customers. (Doc. 35 ¶ 1). Evans has different operating divisions, one which is Z Intermodal. (*Id.* ¶ 2). Z Intermodal is not a separate company, it is an operating division within Evans. (*Id.*). D7 Transportation, Inc., is an agent on behalf of Evans and holds itself out as Z Intermodal. (*Id.* ¶ 3).

GFA Alabama, Inc. ("GFA") is a third-party logistics provider that assists customers in making transportation arrangements. (*Id.* ¶ 4). This includes engaging carriers to provide transportation services (*Id.*). With respect to transportation arrangements, GFA would engage third-party carriers, such as Evans, to perform transportation services. (*Id.* ¶ 5).

In or around February 23, 2022, GFA's CFO executed a document entitled "Billing Requirements" provided by Evans. (*Id.* ¶ 12; Doc. 25-7). GFA engaged Z Intermodal, aka Evans, to render transportation services on GFA's behalf since at least 2022. (Doc. 35 ¶ 6). GFA would contact D7 Transportation and provide D7

---

[1] The following facts are drawn from the parties' respective Statements of Material Facts. Citation to the relevant responsive statement without explanation or clarification indicates the Court has deemed the underlying statement admitted. For clarity and ease of reading, the Court omits quotation marks from admitted statements that are reproduced in this Order. Citations to the parties' respective briefs are to the internal pagination, rather than the ECF header stamps, unless indicated otherwise.

Transportation with a pickup and delivery receipt that that would identify Z Intermodal as the carrier. (*Id.* ¶ 7).

GFA was aware that Z Intermodal was the carrier performing the transportation. (*Id.* ¶ 8). While GFA would contact D7 Transportation, D7 Transportation would hold itself out to GFA as Z Intermodal. (*Id.* ¶ 9). After Evans rendered the services, Evans would invoice GFA with each invoice indicating that Z Intermodal is a division of Evans. (*Id.* ¶ 10). In each instance GFA would pay the invoices to Evans, not D7 Transportation. (*Id.* ¶ 11).

Freight charges are charges for services rendered for transportation of the freight from one location to another. (*Id.* ¶ 15). Ancillary charges are additional charges such as per diem and chassis charges associated with the transportation of the freight. (*Id.*).

In the present case, Evans is seeking the collection of $136,245 in unpaid freight and ancillary charges for services rendered on behalf of GFA, which GFA disputes it owes. (*Id.* ¶ 14). With respect to the charges at issue, GFA does not dispute that Evans rendered the services and, with the exception of $11,560.00, that the charges are accurate and due and owing to Evans. (*Id.* ¶ 16).[2] GFA also does

---

[2] GFA disputes $11,560.00 because the invoices allegedly lacked support. (Doc. 35 ¶ 18). If the Court grants summary judgment in favor of Evans on the remainder of its claim as well as GFA's counterclaims, Evans has stated that it will waive $11,560.00 of the charges. (Doc. 25 at 5).

not dispute that it knew that Evans was involved with the transportation services provided to GFA. (*Id.* ¶ 17). The reason GFA has not paid the charges is due to its counterclaim related to the theft of three containers that were in the possession of Evans at the time of the theft. (*Id.* ¶ 19).

GFA asserts a counterclaim against Evans related to the theft of three containers from D7 Transportation's yard, which is located at 4909 Old Louisville Road, Garden City, Georgia. (*Id.* ¶¶ 20, 21). GFA alleges the containers were stolen on or about July 25, 2022, and August 30, 2022. (Doc. 16 ¶¶ 2-10). GFA did not own the freight in the containers, did not own the containers themselves, and did not own container chassis. (Doc. 35 ¶ 28). However, GFA has alleged that it was "forced to pay their vendors and customers $149,634.04 as a direct result of the loss of the freight." (Doc. 16 ¶ 22).

The container numbers are TGHU6493982, CLKU5002930 and TLLU5508475. (Doc. 35 ¶ 20). Three Bills of Lading issued by LX Pantos Co., LTD covered the containers. (*Id.* ¶ 23; Doc. 25-9). They each indicated a Port of Loading in "SHINHANG (BUSAN) KOREA," a Port of Discharge in "SAVANNAH," and a Place of Delivery in "MCDONOUGH,GA." (Doc. 25-9). The Bills of Lading contain "Paramount Clauses" including one that that "[t]he Carriage of Goods by Sea Act of the United States of America (COGSA) shall apply to the carriage of goods by sea, whether on deck or under deck, if compulsorily applicable to this

4

FBL or would be applicable but for the goods being carried on deck in accordance with a statement on this FBL." (*Id.* at ECF p. 4, 7, 10). The Bills of Lading each referenced an "MBL," or Master Bill of Lading, which corresponded to three Sea Waybills as follows:

| BL No. | Container No. | MBL No. | Shipper |
|---|---|---|---|
| PLIHQ4D66383 (Doc. 25-9 at ECF p. 2) | 1GHU6493982 | EGLV040200220331 (Doc. 25-10) | Evergreen |
| PLIHQ4D86680 (Doc. 25-9 at ECF p. 5) | TLLU5508475 | ONEYSELC84048906 (Doc. 25-11) | ONE |
| PLIHQ4D90788 (Doc. 25-9 at ECF p. 8) | CLKU5002930 | HDMUSELM15563500 (Doc. 25-12) | HMM |

The Evergreen Sea Waybill contains terms and conditions including a "Clause Paramount and Responsibility of Carrier" which provides as follows:

> 5. Clause Paramount and Responsibility of Carrier
>
> (A) Clause Paramount - . . . . Notwithstanding anything to the contrary, if the carriage called for in this Bill is a shipment to or from the United States, the liability of the Carrier or its Sub-contractor shall be exclusively determined pursuant to COGSA which is contractually incorporated into this Bill. The provisions cited in the Hague Rules and COGSA (except as may be otherwise specifically provided herein) shall also govern before the Goods are loaded on and after they are discharged from the Ship provided, however, that the Goods at said times are in the actual custody of the Carrier or any Sub-contractor. . . .

(Doc. 25-10 at ECF p. 8). The ONE Sea Waybill contains terms and conditions including a "US Clause Paramount" which provides as follows:

> 26.1 If the Carriage covered by this Bill includes Carriage to or from a port or place in the United States of America, including its districts, territories and possessions, this Bill shall be subject to US COGSA, the terms of which are incorporated herein and US COGSA shall govern throughout the entire Carriage set forth in this Bill (and not just Waterborne Carriage) from the time of receipt of the Goods to the time of delivery of the goods.

(Doc. 25-11 at ECF p. 24). The HMM Sea Waybill contains terms and conditions including a "CLAUSE PARAMOUNT" which provides as follows:

> (B) If this Bill of Lading covers Goods moving to or from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Bill of Lading, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all stages of Multimodal Transportation.

## Legal Standard

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive

law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex*, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). In addition, the court must "avoid weighing conflicting evidence or making credibility determinations." *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). When the record as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no genuine dispute for trial. *Fitzpatrick*, 2 F.3d at 1115 (citations omitted).

## Discussion

Evans seeks summary judgment both on its claim for unpaid charges and on GFA's counterclaim. GFA does not dispute that it owes Evans for transportation services. (Doc. 28 at 1). However, it argues that it may offset or recoup its counterclaims against the unpaid charges. (*Id.* at 2). To determine whether this is so, the Court must first determine the law applicable to this dispute.

### I.  Carriage of Goods by Sea Act (COGSA) and Recoupment

The parties' respective rights and responsibilities stem from the Bills of Lading.[3] "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the

---

[3] GFA resists this, somewhat. In its Response to the second Motion to Dismiss, GFA argues that "[t]he Bills of Lading and the duties therein do not apply as between Plaintiff and Defendant who are both subcontracted carriers, and thus parties on the same side of the contract," while also conceding "that the Bills of Lading do have some relevance in this case, but only for the purpose of determining whether the Carmack Amendment or COGSA applied to the transportation of the containers at issue." (Doc. 21). Paragraph 10.1 of the The LX Pantos Bills of Lading provide that "[t]hese conditions apply whenever claims relating to the performance of the contract evidenced by this FBL are made against any servant, agent or other person (including any independent contractor) whose services have been used in order to perform the contract, whether such claims are founded in contract or in tort . . . ." (Doc. 25-9).

8

contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004) (citing 2 T. Schoenbaum, Admiralty and Maritime Law 58–60 (3d ed. 2001)).

The Carriage of Goods by Sea Act (COGSA), codified in a Note to 46 U.S.C. § 30701,[4] governs bills of lading for the carriage of goods "from the time when the goods are loaded on to the time when they are discharged from the ship." *Kirby*, 543 U.S. at 29. However, the Act provides that parties to the bill of lading may extend its coverage to land transportation prior to loading and subsequent to discharge from the ship:

> Nothing contained in this Act shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.

COGSA § 7. As the sea waybills above show, COGSA's coverage was extended to land transportation as to all of the goods in question.

The Eleventh Circuit has clarified that "COGSA, when it applies, supersedes other laws." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co.*, 215 F.3d 1217, 1220 (11th Cir. 2000) ("COGSA provides an exclusive remedy . . . ."). COGSA § 3(6) provides for a one-year statute of limitations for loss or damage by a carrier. GFA's

---

[4] Citations to "COGSA §" refer to sections of the Act as codified in 46 U.S.C. § 30701 note.

original Counterclaim was filed March 15, 2024, more than 2 years after the alleged theft of the shipping containers on or about July 25, 2022, and August 30, 2022, which means the Counterclaim would be barred to the extent that COGSA applied.

However, the Counterclaim is not barred by the COGSA statute of limitations for two reasons. First, even assuming the statute of limitations has run, GFA can raise its claim defensively.[5] That is because "[i]f the carrier sues the shipper for freight after the time for suit has expired, the shipper may begin a suit for damages by way of recoupment even after the one-year period has run." 1 Schoenbaum, Admiralty & Mar. Law § 10:43 (6th ed.) (hereinafter "Schoenbaum"); *See Distrib. Servs., Ltd. v. Eddie Parker Ints., Inc.*, 897 F.2d 811, 814 (5th Cir. 1990) ("[W]e hold that a defendant can assert a claim for cargo damages by way of a

---

[5] The federal rules provide the Court with a great deal of leeway to recast an affirmative claim into a defensive claim of recoupment. Fed. R. Civ. P. 8(c)(2); *see also* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1275 (4th ed.) ("[W]hen the defendant asserts a permissive counterclaim that is barred by . . . the statute of limitations . . . [t]he federal courts still may permit this type of claim to be asserted as a defense under the name "set-off" or "recoupment" to the extent that it diminishes or nullifies the plaintiff's claim. Inasmuch as it is not clear whether set-offs and recoupments should be viewed as defenses or counterclaims, the courts, by invoking the misdesignation provision in Rule 8(c), should treat matter of this type as if it had been properly designated by the defendant, and should not penalize improper labelling."). In light of the production of the Master Sea Waybills after GFA's pleading, the complexity of maritime caselaw, and the general uncertainty about pleading recoupments, the Court finds justice requires treating the claim as designated as both a claim and a defense, and no terms are necessary for such treatment.

recoupment under COGSA, even though an affirmative action for damages would be barred."); *accord Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998). Evans argues that the relevant agreements preclude this tactic; the Court considers this argument in the next section.

Second, the Former Fifth Circuit sitting en banc[6] clarified that claims in the nature of indemnity (as the Court discusses in Section III, below) arising from damage or loss to goods covered by COGSA are not subject to the 1-year COGSA limitation. *Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 731 (Former 5th Cir. 1983), *overruling Grace Lines, Inc. v. Central Gulf Steamship Corp.*, 416 F.2d 977 (5th Cir. 1969).[7] In either case, the statute of limitations is no obstacle.

## II. Contractual Waiver of Set-off

Evans next argues that GFA is contractually barred from withholding freight charges based on other disputes it has with Evans. (Doc. 25 at 6). Specifically, the Bills of Lading provide that "[f]reight shall be paid in cash, without any reduction or deferment on account of any claim, counterclaim or set-

---

[6] In *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent post-September 30, 1981 decisions of "the full en banc court of the Former Fifth." *See also Culver v. Slater Boat Co.*, 722 F.2d 114, 123 (Former 5th Cir. 1983) (en banc) (opinions of the Former Fifth sitting en banc are "binding on all district courts in the present Fifth and Eleventh Circuits").

[7] The Court recommends the Parties review *Hercules* closely before filing supplemental briefs.

11

off, whether prepaid or payable at destination." (Doc. 25-9 at 7). The Parties' Billing Requirements also provide that "[c]ustomer will not delay or withhold payment due to the alleged errors in billing or because of any other dispute customer may have with Evans Network or its affiliates or subsidiaries." (Doc. 25-7). However, neither of these provisions squarely address recoupment. Courts have required greater specificity in contracts to bar recoupment. *Super98, LLC v. Delta Air Lines, Inc.*, 309 F. Supp. 3d 1368, 1381 (N.D. Ga. 2018) (holding that provision that "[a]ll payments required under this Agreement will be made in full without set-off or counterclaim" did "not necessarily apply to recoupment."); *Mitsubishi Elec. Corp. v. Westcode, Inc.*, No. 3:15-cv-505-MAD-DEP, 2016 WL 3855180, at *7 (N.D.N.Y. July 12, 2016) ("Far from being an explicit waiver of Westcode's rights to assert a counterclaim or affirmative defense, the no setoff clause does not contain the words counterclaim, defense, waiver, or release."). This is because "a shipper's recoupment . . . **does not operate as a cross-demand**, but merely lessens or defeats a plaintiff's recovery." *Shipping Corp. of India v. Pan Am. Seafood, Inc.*, 583 F. Supp. 1555, 1557 (S.D.N.Y. 1984) (emphasis added) (citing *Compania Naviera Puerto Madrin S.A. Pan. v. Esso Standard Oil Co Co.*, 1962 A.M.C. 147, 1961 WL 102092, at *19–20 (S.D.N.Y. Mar. 22, 1961); *see also C–ART, Ltd., v. H.K. Islands Line Am., S.A.*, 940 F.2d 530, 532 (9th Cir. 1991) ("Bills of lading . . . as contracts of adhesion, are strictly construed against the carrier.") (citations and internal quotations omitted);

12

*cf. Chi. & N.W. Ry. Co. v. Lindell*, 281 U.S. 14, 17 (1930) ("The practice of determining claims of shippers for loss or damage in suits brought by carriers to collect transportation charges is not repugnant to the rule prohibiting the payment of such charges otherwise than in money."). The Court finds that none of the proffered agreements squarely bar recoupment in an affirmative suit by Evans.

Evans next argues that even if GFA can bring a claim in recoupment under the Bills of Lading, GFA cannot bring *this claim* because GFA is not the real party in interest as to a claim for someone else's lost goods. The Court considers this argument next.

## III. Real Party in Interest

Evans argues that because GFA did not hold title to the goods, it is not the real party in interest in a COGSA suit for loss of the goods.[8] Courts have held that a party who is not named in the Bill of Lading and who does not otherwise have an ownership interest in the goods cannot bring a COGSA suit for lost goods. *See*

---

[8] Evans also argues that GFA lacks "standing" to bring such a claim, and other maritime cases have used the word "standing" to discuss who is the proper party to bring a claim for lost or damaged goods. *See, e.g.*, *IM EX Trading Co. v. Vessel, BEATE OLDENDORFF*, 841 F. Supp. 1151, 1152 (M.D. Fla. 1993). However, a close read of those cases reveals that the cases concern prudential doctrines about the real party in interest and do not discuss constitutional standing. Courts have found that payments to third parties giving rise to contribution or indemnity, as discussed below, are sufficient to provide constitutional standing. *TransGlobal Airways Corp. v. JAF, LLC*, No. 06-22592-CIV, 2007 WL 9702180, at *20 (S.D. Fla. Nov. 13, 2007).

13

*IM EX Trading Co. v. Vessel, BEATE OLDENDORFF*, 841 F. Supp. 1151, 1153 (M.D. Fla. 1993); *cf. also Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co.*, 215 F.3d 1217, 1222 (11th Cir. 2000) (discussing "well-established principles of maritime law grant an owner of lost or damaged cargo standing to sue for damages based on its proprietary interest in the goods, even if the owner is not explicitly named in the bill of lading."). However, the Court finds that because GFA has paid the shipper of the goods for losses allegedly caused by Evans, it can likely raise its claims under the Bills of Lading under a contribution or indemnification theory.[9]

"By long tradition, the doctrine of joint and several liability applies in admiralty" and "[i]f one tortfeasor pays a disproportionate share of the plaintiff's

---

[9] District courts often construe claims arising from negligence to third parties as claims for tort indemnity or contribution. *Solstice Oil & Gas I LLC v. OBES Inc.*, No. CIV.A. 12-2417, 2014 WL 5500476, at *7 n.2 (E.D. La. Oct. 30, 2014) ("Although Ole Brook asserts a negligence claim against JAM, it does so based upon damages that Solstice suffered. . . . The Court therefore construes any such negligence claim as one for tort indemnity or contribution."); *Churchey v. Safeco Ins. Co. of Ill.*, No. 16-14585-CIV, 2017 WL 887188, at *1 (S.D. Fla. Feb. 2, 2017) ("The Plaintiff now seeks to amend his Complaint . . . to add the tortfeasor as a named Defendant, and he seeks to add a count of negligence against the tortfeasor. One way to construe the First Amended Complaint would be as a primary tort cause of action against the tortfeasor for the underlying negligence and a secondary cause of action against the insurer for indemnity."), *report and recommendation adopted*, 2017 WL 927945 (Mar. 3, 2017); *Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-CV-0054 (JCH), 2022 WL 596740, at *35 n.35 (D. Conn. Feb. 28, 2022) ("Because the court has already concluded that Ludlow has a duty to indemnify MDC pursuant to the Contract, and because MDC's allegation, in Count Ten, that 'Ludlow's negligence was direct and superseded any negligence of the MDC' sounds in tort, the court construes Ludlow's Count Ten as a claim for common law indemnity grounded in tort.").

14

judgment, she may seek contribution." 1 Schoenbaum § 5:16. "The doctrine of indemnity, in contrast to contribution, shifts the entire amount of the loss (including attorneys' fees) from one party to another." *Id.*

Indemnification is available to parties liable under COGSA. *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 941 (11th Cir. 1990). While "[i]t is true that most maritime indemnity cases involve shipowners and stevedores, who have an agency relationship . . . cases indicate, however, that indemnity may arise in a broader range of relationships." *SPM Corp. v. M/V Ming Moon*, 22 F.3d 523, 526 (3d Cir. 1994). "For example, in *Hudson Waterways* . . . the court explained that under tort principles, as opposed to contract, a passively negligent party in admiralty can recover indemnity damages from a primary negligent party." *Id.* (citing *Hudson Waterways Corp. v. Coastal Marine Serv., Inc.*, 436 F.Supp. 597, 602 (E.D. Tex. 1977); *Parfait v. Jahncke,* 484 F.2d 296, 303 (5th Cir. 1973)). The fact that there is no contractual indemnity provision does not appear to be an obstacle; "[a] claim for indemnity may be based on either contract or tort." 1 Schoenbaum § 10:41. However, the Court's conclusions that GFA might be able to raise a defensive claim for indemnification raises several unanswered questions, discussed below.[10]

---

[10] Until the Court can address the underlying issues, it cannot rule on Evans's request for attorney's fees, because in maritime cases it appears contractual attorney's fees are only available to a prevailing party. *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010) ("Attorneys' fees will be awarded to the prevailing party in maritime cases if: '(1) they are provided by the

15

## IV.  Outstanding Questions

The Court is left with a few questions that must be answered before trial. (Doc. 28 at 6-7). First, as to indemnification, because GFA paid the shipper outside of litigation, it "must show that the settlement . . . was reasonable in light of the risk to which it would have been exposed if the suit against it had gone to trial." *Nissho-Iwai Co. v. M/T Stolt Lion*, 617 F.2d 907, 916 (2d Cir. 1980) (citing *Mathiesen v. Pan. Canal Co.*, 551 F.2d 954 (5th Cir. 1977); *Damanti v. A. S. Inger*, 314 F.2d 395 (2d Cir. 1963)). The Court was not presented with any details as to the circumstances in which GFA paid the shipper, so it can say no more on this issue.

Second, to the extent that GFA concedes it must (due to contractual or statutory limitations) proceed under a theory of recoupment, the Court needs to know whether the unpaid freight at issue arose from the same Bills of Lading that covered the stolen goods. *Shipping Corp. of India*, 583 F. Supp. at 1557. Each Bill of Lading is treated as a separate contract in this respect. *Id.*

---

statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees.") (citing *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001)). *See also* 1 Schoenbaum § 10:41 (6th ed.) ("[A]n award of attorneys' fees is not appropriate between joint tortfeasors in a contribution action.").

## Conclusion

For the above reasons, the Court is not able to grant any of the outstanding motions. However, it may be the case that summary judgment on certain issues is appropriate based on the answers to the outstanding questions the Court presented. *See* Fed. R. Civ. P. 56(f). Accordingly, the Court will order more briefing. It is

**ORDERED** that Plaintiff Evans Delivery Company, Inc.'s ("Evans") Motion to Dismiss Counterclaim (Doc. 15) and Evans's Motion to Dismiss Amended Counterclaim (Doc. 18) are **DENIED**. Evans must file an Answer to the Counterclaim within 14 days of the date of entry of this Order. Fed. R. Civ. P. 12(a)(4)(A). It is

**FURTHER ORDERED** that Evans's Motion for Summary Judgment (Doc. 25) is **DENIED**. It is

**FURTHER ORDERED** that the parties are **DIRECTED** to file supplemental briefs addressing whether GFA may seek indemnification (in recoupment or otherwise) of Evans's claim for freight. GFA is **DIRECTED** to file a supplemental brief, no more than 10 pages in length, within 21 days of the date of entry of this Order. Evans is **DIRECTED** to file a responsive brief, no longer than 10 pages in length, within 14 days of being served with GFA's supplemental brief. No supplemental reply brief will be permitted absent order of the Court. It is

**FURTHER ORDERED** that if the parties wish to mediate this dispute, they should contact the Court's courtroom deputy as soon as possible to obtain a stay of these deadlines.

**SO ORDERED** this 14th day of March, 2025.

_____
Victoria Marie Calvert
United States District Judge